U.S. v. Victor Orena, 24-835. Thank you, sir. Mr. Shull. Thank you, Your Honor. I have to say, as a preliminary point, it's a bit intimidating. This panel is extraordinarily prepared today, and the lawyering's been terrific also. So it's a little intimidating to get up here at this point. I know the Court's read the briefs. Where everybody was in this case until about six months after the Pena decision came down was that powers applies. The case was remanded for a 924C count to be vacated, and everybody agreed that de novo resentencing was required. The government, the judge, and the defendant. Then along came Pena. By the way, I don't know that this was a uniform position among all courts. Judge Nathan in the Atelier brothers' cases was more persuaded, I think, by the Gordill's line of cases. That is, that there should be some showing as to whether the vacated count was truly interdependent with the other counts. But that's not where we are today. So today, everybody agreed in this case that powers apply. I say on the eve of the de novo resentencing, we had objections in and so on. Government changed its position. They said based on Pena, that gave them license to tell the Court that rather than powers requiring de novo resentencing, a position like Judge Calabresi's concurrence in this case, in Cazio, that the Court had discretion to either resentence or just correct the sentence in the case, eliminating that count. But I think they over-read Pena, and I think Judge Comittee over-read Pena. I say that this case is on all fours with Cazio, but I don't even think we needed Cazio, quite frankly. It just has the Court look at, and if you look at the Pena case, page 623, they were very clear at the end to say that a district court's discretion to not conduct de novo resentencing has its limits. And they went on to say that it's just enough to say that where there would be an empty formality to resentence, then the discretion can be exercised against de novo sentencing. And that was enough for that case. And what do we mean by that? Well, we draw from the cases like Powers' more recent Montague case, Cazio, concurrence itself, that what we mean by this mere formality is whether the act would be strictly ministerial. And by strictly ministerial, what we mean is, and Judge Calabresi explains it, but it's been explained in Powers also, what we mean is whether all of the remaining counts were sentenced based on the mandatory minimum, based on the minimum sentence. And if even one of those counts wasn't based on the minimum, then it's not strictly ministerial and we go forward. Or it would be strictly ministerial if in Ayad, Judge Nathan said on the panel, not presidential, but I still cite it here under 32.1.1, you know that it's not presidential. So can I ask a question? I mean, one of the big differences that I think between this case and Cazio is that there was a protracted procedural history before the new judge. He's had this case since 2020. He considered Mr. Aronoff's motion for compassionate relief, including then the claims of revalidation. So he's not the original sentencing judge, but he's got a decent amount of expertise with your client. And one of the things that is not clear to me from the record was whether or not the compassionate release motion resembled enough of a plenary resentencing. Good question, Your Honor, obviously, and that's sort of the government's pitch in the case. Judge Committee already was through this, considered these factors. I would say that Judge Blatt characterized the approach in that case. In United States v. Russo, he specifically talks about Judge Committee's approach in the Arena case, and he says that he doesn't adhere to that punitive concept in approaching the 353A factors, the idea that the fact that it was a murder overwhelms every other factor. He also wrote that in his book. But I think there are a number of answers to whether. The question is whether Judge Committee already considered these matters. Maybe I'll ask the other question or a different question related to CASIO. The way that the concurrence characterizes what CASIO stands for is not exactly the way CASIO stands for it. Like, what do you think CASIO stands for? I think CASIO stands for the principal opinions, isn't it? Or I would like it to stand for what Judge Calabresi's concurrence says. I don't think we can. Okay, but it was his concurrence. That's what I mean. That's right. No, I think that's right. So what do you think the CASIO majority stands for? I think CASIO majority stands for if there's a new sentencing judge and there are plausible change circumstances, then de novo resentencing is required. And here's why it's important. How much of the plausible change circumstances need to, like, map onto the specific criteria that the judge looked at or the majority looked at in CASIO? Because certainly the concurrence by Judge Lynch suggests it's a new man or rehabilitation, but that wasn't the way it was. It was much more granular in CASIO. Listen, I have great respect for Judge Lynch, but I don't think we go that way. He happened to have been my advisor on a paper I wrote on gender discrimination and jury selection. I have great respect for him. I don't think we go the way that he went. What I'd say is this, Your Honor. If we compare it, for example, to the CASIO factors that the main principal opinion addressed, there's no question the Arena case is a stronger case for de novo resentencing. CASIO is a fellow who reportedly renounced terrorism five years ago. I mean, really? Because there's evidence in the record of the fact that he is difficult, that he is. I mean, yes, you have, like, on one side you have evidence that, you know, he's a minister, and at one point he was helping younger inmates, and now he's at a point where there was a lot of record about him being argumentative and him being confused and him being. Right. I mean, if you're talking about a person that is not going to perpetuate antisocial behavior, I think you have a much more mixed record now than you may have had at another point in time. Judge Perkins, the record is clear. Mr. Arena is confused and argumentative because he has Alzheimer's and dementia. He doesn't know who he is. He thinks one day he's the president of the United States, and he thinks another day he's the warden. He's been given the minimal, lowest possible assessment for violence that the Bureau of Prisons can give. He's a person who in Casio we had a five-year record of reportedly renouncing terrorism. Mr. Arena's had no reported contact with organized crime in the 30-plus years he's been away. He became an ordained minister. He's helped through the NAACP counseling youth at risk. He's a completely different person. He's a 90-year-old man versus a 58-year-old man, reportedly the acting boss of an organized crime family. So you understand Casio as saying one factor that matters is the new judge that's met here, and the second factor is whether there's a changed circumstance that might undermine one of the initial grounds for the sentencing reason in the first place. And you would say it doesn't have to be the same changed circumstances as existed in Casio. It just has to be a changed circumstance that plausibly, or whatever, however you want to characterize it, an argument for a shift in or an undermining of one of the initial grounds for sentencing. I would agree with all of that, Judge Nathan, but I would add that in this case we have all of it. We have not just things that don't necessarily address exactly what was in the sentencing order, but this is the classic case in which we cannot rely on the sentencing order, primarily because of events that happened afterwards, but also if we look at the focus in the sentencing order itself of what Judge Weinstein was concerned about. This incapacitation for the rest of his life and so on. Just like in the other cases, Rousseau, Montilione, who have been released. But if we look at the sentencing order, it's clear that this is a case in which we cannot rely on that. Number one, this new evidence that we've cited undermines completely not only the sentencing order, but the subsequent proceedings that were before Judge Weinstein. For example, Judge Weinstein found it to be plausible that maybe DiVecchio, the crooked agent, gave Scarpa information for Scarpa's own safety, but paranoia to suggest that he did it to help a faction in the war. There are articles, volumes, et cetera, about how DiVecchio helped that side of the war. He's admitted now on television. Look, I recite all of this stuff in the brief. There are books and articles. Even at a de novo resentencing, you'll face the contention, and tell me why it's wrong, that that's all information that should be pursued in a 2255. Because it is relevant? Just as you faced the argument in the prior panel that I was on in this case, that that doesn't belong in a compassionate release motion. It belongs in a 2255. I guess one question is, since you're putting so much emphasis on that, if we agree with that notion that it wouldn't be appropriate in a de novo resentencing and therefore wouldn't be appropriate to consider in a district court's discretionary determination under Cossio and Pena as to whether or not there should be a de novo resentencing, what are we left with here? You're left with the other changed circumstances that are very much like in Cossio, but I say even stronger. And the reason is because, as Power said, there's a conviction error here. So we don't look at whether, well, would it have made a difference if this count weren't really in there. We do to the extent that it's not strictly ministerial, not a mandatory minimum, and those kinds of things. But that's the open question, right? Whether we resentence when it's not strictly ministerial, that's exactly the question that Cossio left open. I think Cossio did not leave that respectfully, Your Honor. I don't think Cossio left open the question whether you do. I think it cabins the discretion, and where it's not strictly ministerial, you must resentence. That discretion is cabined there. If there's a new judge and plausible changed circumstances, the answer to the question Why wasn't it an example of one circumstance in which it might be an abusive discretion? I don't understand where in Cossio ñ I mean, there's a reason why Judge Calabresi's concurrence was not the majority opinion. Well, Judge Calabresi went even a step further. Judge Calabresi, I think, said apply powers across the board, period. Didn't just limit it to if it's strictly ministerial. That's how I read it. But in powers, we also see strictly ministerial Montague, a case cited after this. But the answer to the question is, well, isn't this more appropriate for 2255? It's appropriate for 2255, and it's appropriate here because these factors were all relevant. The new evidence is all relevant to the sentencing order that Judge Weinstein entered. Judge Weinstein made all of these findings about this vast enterprise that if it weren't for the FBI, murders would have been multiplied. If it weren't for the FBI, there might not have been a war. There was an FBI agent who fomented the war. But you don't get to relitigate facts in sentencing. No. I mean, right to the ñ Sentencing facts that go beyond the conviction, I think we do, Your Honor. And Judge Weinstein based it on the idea that this is a person running this vast empire and so on. And so we now know from the most recent Sparacco letter, top echelon confidential informant, that he was given license by DiVecchio to commit 12 murders. We now know all of these other things. And what was attributed in the sentencing order, not the conviction, in the sentencing order to Arena, outside the evidence of the conviction, are things that we now know are not true, or have reason to believe with solid evidence are not true. And that's why it goes to sentencing. These are all relevant 3553A factors, including the need to incapacitate him. And also, forgetting about that, the first part of it, his 90 years old, all of those other factors now are simply 3553A factors that in this context, now that we have a conviction error, it's appropriate under CASU to consider those things. Those are the kinds of plausible change circumstances with a new judge that are exactly right. And it's inappropriate to rely on the sentencing order in this case, particularly 30-some years old, and I can go through the order itself, when we know that factors have been undermined. One more question on your view of CASIA. Do you understand the determination of what constitutes a change circumstance to be within the district court judge's discretion? That's a good one. I think the answer is no. I think that the court in this case thinks that there are objectively plausible change circumstances. It gave examples here. And if those are the examples that led the Second Circuit to say, these are plausible change circumstances under the required cabin of the discretion. Right. But you can imagine it could be within the range of discretion. Some judges might conclude yes, and some judges might conclude no, and so it would be reviewed for abuse of discretion if that analysis under CASIO had been done by the district. Academically, yes, Your Honor, but realistically in this case, the difference between 90 and 58, terminally ill, unable to care for yourself, and 58, organized crime boss, et cetera, indigent versus a $2 million fine, none of this stuff was reassessed. I think personally it makes a mockery of concepcion, the idea that we appear before a court today for sentencing as the person is today. I think that's a principle that's encompassed in the CASIO decision. Thank you. I'm sorry.   Thank you. Attorney Lesh. Sorry. May it please the Court, Your Honors, Devin Lesh for the U.S. Attorney's Office in the Eastern District of New York for the United States, and the appellee in this case. I also represented the United States in the prior proceedings before the district court. I'd like to start with CASIO. CASIO does not require a de novo resentencing here. First of all, CASIO pointed out that it was not announcing a bright-line rule, and CASIO pointed to two factors in the CASIO case that made it an abuse of discretion for the district court. The first factor was a judge who, crucially here, lacked knowledge of the underlying sentencing and the constellation that the original sentencing judge put into place. The second factor was that there were meaningfully changed circumstances. I'd also like to point out that in two other cases, this court has articulated other factors that can be considered on whether it is an abuse of discretion to hold a de novo resentencing or not. And that's the Pena case, as mentioned, when the sentencing would be strictly ministerial, where the defendant had other mandatory life sentences, and the Ayad case, where the defendant's crimes were so serious, and the amount of time remaining on the sentence in his current age, that resentencing would not realistically lead to his release. Is there just a little bit of daylight between strictly ministerial in Pena and empty formality in Ayad? Yes, Your Honor, but we think that this is similar to the Ayad case. And like in the Ayad case, the crimes here were so serious, Arenda received three life sentences. Judge Weinstein articulated his rationale in a nine-page published memorandum and decision about why the 3553A factors required three life sentences here, not mentioning, by the way, the vacated 924C count that brings us before this court today. One of the things that is, I think, looming large is that the compassionate release cases predated the vacater of count eight. We know that there was no balancing. We know that he didn't have to deal with Cosio. Like, how do we know whether or not it would come out one way or the other with Cosio now as precedent? Yes, Your Honor. We know because of Judge Committee's opinion in this case denying the de novo resentencing. And in that opinion, he said that because of his familiarity with this case, because of the briefing, the oral argument, and the decision that he rendered in the compassionate release case. Right, but we didn't have Cosio then. We didn't have Cosio then. So, like, we don't know what he would have done as to his determination of his discretion if it had existed. We don't know because we didn't have Cosio at that point. You're correct. But what Judge Committee did articulate was that he was familiar with the case. He was familiar with Judge Weinstein's original sentencing rationale. And he noted how serious the underlying crimes were, including the three life sentences. So all of the – Let me ask it this way. If the changed circumstance here were exactly the same as that in Cosio, so you have a new judge, not the sentencing judge, and you have the exact same changed circumstance as you had in Cosio, would you be making the same arguments that you're making now? Yes, Your Honor. Because I don't think that the factor is simply that there is a new sentencing judge. The way that I read Cosio is that there is a new sentencing judge who is not familiar with the court's original constellation. And Judge Committee was here because of two things. One, the detailed sentencing memorandum that Judge Weinstein put together explaining the rationale behind the sentence. And two, because of his extensive oversight of the litigation on the compassionate release motion. And I think that differs us from Cosio in a material way and puts us much closer to the Ayotte case, where the new sentencing judge who – there was a new sentencing judge. The defendant articulated changed circumstances. And the newly assigned sentencing judge determined that because of the seriousness of the crimes and the amount of time remaining on the sentence, a de novo resentencing was not appropriate. And this court affirmed the district court's decision in that case. Your Honor, I'm happy to take any other questions from the panel. If not, I will sit down. Thank you. Thank you. Appreciate it. Attorney Sheldon. Very briefly, Your Honor. The idea that Judge – that in Cosio, what didn't have a sufficient record of the underlying reasons for the sentence imposed just isn't accurate. Judge Gleeson made clear why he sentenced him. Judge Lynch, in his concurring opinion, focuses on that to suggest that we didn't need a de novo resentencing because we knew why Judge Gleeson wanted the defendant incapacitated. The – important to keep in mind, the compassionate – Judge Perez asked the question before Cosio. In the compassionate release setting, Judge – the question turned on Judge Committee's decision upheld that in compassionate release, 3582 context, he's not permitted to consider evidence that undercut – this is what Judge Nathan was asking earlier – that undercuts the conviction. I'm not offering it to undercut the conviction. I'm offering it to undercut – to show why reliance on the sentencing order is wrong. Let me just read for the court. I already mentioned one thing. Page 873 of the original sentencing order. That's an 821 FSUP 870. It's a 1993 decision. Basically, what he says is the evidence is that these defendants – speaking about Arena and Amado, but let's focus on Arena – will not abandon their criminal activities. They will try to participate in gang activities from prison. No matter how aged or firm, they'll continue to do it. Thirty-plus years proves that that was simply wrong. There is no evidence of any organized crime involvement by Victor Arena since the day he was sentenced. Aren't these all arguments – those arguments, it feels like those were front and center. You're the one who said actually wait on the sentencing. We want you to rule on our compassionate release motion first. The court was pretty thorough and clear in its compassionate release ruling, and it feels like you're asking for a do-over. I'm really not, Your Honor. Casio tells us to look at the changed circumstances. These are changed circumstances directly relevant to sentencing. But if you get your same judge, right? So you said please do the compassionate release first. The compassionate release analysis, it didn't kick it out on extraordinary change or change of circumstances. It kicked it out on the 3553 frame. You go back to him. What's different? He never considered these changed circumstances, the new evidence, all of the stuff that undermines the reasons for the sentencing. He found that – it's in a footnote. I think it's page 25 or footnote 20-something. In his original order, he says he's not permitted to consider this evidence in a 3552. He must consider it in his sentencing. It's directly relevant to sentencing. Judge Weinstein said harsh sentences are needed to extract them from criminal activity to which they would no doubt return. This 90-year-old man with Alzheimer's is not going to return to it. When the government said during one of our hearings, well, if he gets out, he'll call his old friends up and get back into business. I said, who's he going to tell them he is, the president of the United States or the warden? This is a man with debilitating and constantly getting worse Alzheimer's. So those are all changed circumstances. Do we have another bite at the apple? Yes, because there was conviction error. And maybe I made a mistake going for a compassion release. I thought this case compared to all of the others, which is another factor here. Sentencing disparities. Judge Block, Judge Ross relied on in Monteleone and in Russo. There are tremendous sentencing disparities. That's also appropriate when we're going back now and considering the discretion here because we have conviction error. The statistics don't hold up this kind of sentence, and the disparities with the other cases don't. I think we have your arguments in hand. Thank you. Thank you. And we will take it under advisement. Thank you. Appreciate it.